## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**JUN 2 1 2016**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

GRACE J. KAIYUAN
9699 BANTING DRIVE
FAIRFAX, VA 22032
(571) 332-9601

Case: 1:16–cv–01251    (H-Deck)
Assigned To : Moss, Randolph D.
Assign. Date : 6/21/2016
Description: Employ Discrim.   Jury Demand

VS.

JILL SANSING
BLOOD BANK MANAGER
GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23RD STREET NW
WASHINGTON, DC 20037

MAKITA MILLER
ASSISTANT DIRECTOR OF HUMAN RESOURCES
GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23RD STREET NW
WASHINGTON, DC 20037

OLGA KOLCHAR
DIRECTOR OF LABORATORY SERVICES
GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23RD STREET NW
WASHINGTON, DC 20037

**RECEIVED**

**JUN 2 1 2016**

Clerk, U.S. District and
Bankruptcy Courts

### COMPLAINT
### (Race/Color, National Origin, and Employment Discrimination and Retaliation)

### Introduction

1.      Plaintiff, Grace J. Kaiyuan proceeding Pro Se, brings this action pursuant to Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. § 1981a, the

Civil Service Reform Act, 5 U.S.C. § 7703(b)(2), to remedy acts of employment discrimination

and retaliation perpetrated against her by the George Washington University Hospital. (GWUH).

Plantiff contends that GWUH officials discriminated against her by wrongful termination due to her race (Asian) and national origin (Korean). Plaintiff further asserts that her termination was also pretext for discrimination and retaliation for engaging in protected Equal Employment Opportunity (EEO) activity, creating a hostile working environment for her, unfair treatment as an employee, punished her issuing her written employee corrective actions reports without any written warning or any alleged reason leading to her termination at GWUH without proper protocol.

### Jurisdiction

2.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

### Venue

3.      Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff was employed by the George Washington University Hospital (GWUH) in the District of Columbia at the time of her termination, Plaintiff's employment records are maintained by GWUH in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

### Parties

4.      Plaintiff, Grace J. Kaiyuan, a Korean female who is at least 50-years old, is a citizen of the United States and a resident of the State of Virginia, County of Fairfax, and an employee of Defendants, at George Washington University Hospital in the District of Columbia, from September 2009, until her wrongful termination on July 16, 2016.

5.      Defendant Jill Sansing is currently the Blood Bank Manager of George Washington University Hospital. Ms. Sansing is being sued here in her official capacity only.

6.      Defendant Makita Miller, the Assistant Director of Human Resources; and, Defendant
Olga Kolchar, Director of Laboratory Services are aides of Ms. Jill Sansing in the Blood Bank of
George Washington University Hospital.

## Statement of Facts

7.      Plantiff, Grace J. Kaiyuan, an Asian woman of Korean descent, was a medical
technologist employee with over twenty-five years of experience with GWUH and other
employers before being terminated by her Department.

8.      At the time her wrongful termination, Ms. Kaiyuan worked in the Blood Bank within
George Washington University Hospital (GWUH). Ms. Kaiyuan was a Senior Medical
Technologist Level III, which is the highest position as a Medical Technologist at GWUH.

9.      Although Ms. Kaiyuan is fluent in English, English is her second language; as she speaks
with a cognizable non-native speaker accent, which in no way materially interferes with her
ability to perform her job duties.

10.     Ms. Kaiyuan worked for GWUH since September 2009, and her supervisor was Ms. Jill
Sansing, a white female, who became her supervisor in the Spring of 2014.

11.     Prior to 2014, Ms. Kaiyuan was a fully successful employee, never before subject to any
disciplinary action by her employer.

12.     Under Ms. Sansing's supervision, she has been the target of her discrimination since
December 2014, and treated differently from similarly situated employees.

13.     Specifically, Ms. Sansing made repeated, inappropriate, and discriminatory comments
about Ms. Kaiyuan's accent. For instance, Ms. Sansing would speak to her and say, "you talk

funny" or "I am having a hard time to understand you". Ms. Sansing would also use her hand (motioning her to stop talking) or show unseemly facial expressions when trying to speak to her.

14.     Ms. Sansing's comments were purposefully made in front of Ms. Kaiyuan's fellow coworkers and appear to have been made to embarrass her. Upon ridiculing her accent, Ms. Sansing isolated her from her fellow employees by ignoring her when she was addressing her or communicating with her coworkers.

15.     Further, once the ridicule of Ms. Kaiyuan's accent began, she also noticed that Ms. Sansing consistently required that she perform menial tasks outside her designated job responsibilities.

16.     Notably, once this disparate treatment based on Ms. Kaiyuan's national origin and/or race commenced, Ms. Sansing would deny her requests for PTO, even when she would approve the requests of her coworkers.

17.     The constant ridicule made it difficult for Ms. Kaiyuan to do her job. It is also Ms. Kaiyuan's belief that upon filing her first discrimination complaint with the U.S Equal Employment Opportunity Commission (EEOC), Ms. Sansing's treatment of her became even more hostile and discriminatory acts intensified. Specifically, Ms. Sansing made Ms. Kaiyuan scrub behind the Blood Bank's laboratory centrifugation, when her coworkers were performing their job duties.

18.     Ms. Sansing continued to take away Ms. Kaiyuan's principle job duties, thereby significantly diminishing her substantive job responsibilities. Ms. Sansing did not subject any of the other employees, all of whom are of American descent, in a similar manner.

19.     The frequent, severe, and offensive conduct linked to my Korean origin and Asian race created a hostile workplace, which Ms. Kaiyuan believes is in violation to her rights.

20.     Moreover, in December 2014, Ms Sansing issued a written employee corrective action report repeatedly alleging that Ms. Kaiyuan failed to cover he shifts even though she had sufficiently found coverage for her absences. Ms. Kaiyuan's coworkers, who are American and non-Asian and have had more unplanned absences than she did, never received a similar correction action report.

21.     As referenced above, Ms. Kaiyuan contacted the EEOC in January 2015 and did a pre-assessment test for discrimination.

22.     Ms. Kaiyuan notified Defendant, Ms. Makita Miller, about her contact with the EEOC and her plan to pursue a claim of discrimination.

23.     Management, which includes all Defendants listed, agreed to meet with Ms. Kaiyuan in February 2015 and they decided to "push a reset button", so the warning on Ms. Kaiyuan's record would be removed asserting that she would start with a "clean slate".

24.     Despite Defendant's assurances, Ms. Kaiyuan was wrongfully terminated on July 16, 2015. She believes the corrective action protocol was not appropriately followed in her case. Additionally, he job position had been advertised online weeks prior to her termination.

25.     Ms. Kaiyuan believes the reasons for her termination was a pretext for discrimination and in retaliation for engaging in protected Equal Employment Opportunity (EEO) activity. She believes that she was subject to the above treatment due to discrimination on the basis of her race (Asian) and national origin (Korean) and in retaliation for engaging in protected activity, in violation of her rights.

## First Cause of Action
### (Racial Discrimination in the Violation of the Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)

26.     The foregoing paragraphs are realleged an incorporated by reference herein.

27.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race/color and national origin in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext for discrimination and in retaliation for engaging in protected EEO activity.

## Second Cause of Action
### (Reprisal for Engaging in Protected Activities)

28.     The foregoing paragraphs are realleged and incorporated by reference herein.

29.     The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext for discrimination and in retaliation for engaging in protected EEO activity.

30.     Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to terminate Plaintiff, injuring Plaintiff's good name, her reputation, employment and employability. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure/terminate Plaintiff. Therefore, no privilege existed to protect any of the Defendants from liability.

## Third Cause of Action
### (Hostile and Abusive Working Environment)

31.     The foregoing paragraphs are realleged and incorporated by reference herein

32.     The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext for discrimination and in retaliation for engaging in protected EEO activity.

### Fourth Cause of Action
### (Intentional Infliction of Emotional Distress)

33.     The foregoing paragraphs are realleged and incorporated by reference herein.

34.     The conduct complained of hereinabove was outside the conduct expected to exist in the workplace, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

35.     As a proximate result of Defendants', and each other their intentional infliction of emotional distress as hereinabove alleged, Plaintiff has been hard in that Plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

36.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

### Fifth Cause of Action
### (Negligent Infliction of Emotional Distress)

37.     The foregoing paragraphs are realleged and incorporated by reference herein.

38.     In the alternative, if said conduct of Defendants, and each of them, and of their agents and employees was not intentional, it was negligent and Plaintiff is thereby entitled to general damages for the negligent infliction of emotional distress.

39.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## Prayer for Relief

WHEREFORE, Plantiff prays for judgement against Defendants, and each of them, as follows:

(a)     For a money judgment for loss of employability, humiliation and anguish and emotional distress, according to proof;

(b)     For a money judgment representing compensatory damages including lost past and future wages, commissions, and all other sums of money, including employment benefits, together with interest on said amounts, and any other economic injury to Plaintiff, according to proof;

(c)     The sum of a minimum of $250,000.00 in compensatory damages suffered because of discrimination and retaliation.

(d)     For costs of suit, including attorney fees under any applicable statutory or contractual

(e)     For any other damages and further relief that is deemed just and proper.

## Jury Demand

The Plantiff requests trial by jury.

GRACE J. KAIYUAN
9699 BANTING DRIVE
FAIRFAX, VA 22032
(571) 332-9601

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Grace Kaiyuan**<br>**2948 American Eagle Blvd**<br>**Woodbridge, VA 22191** | From: | **Washington Field Office**<br>**131 M Street, N.E.**<br>**Suite 4NW02F**<br>**Washington, DC 20507** |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **846-2015-33295** | **Monica R. Colunga,**<br>**Enforcement Supervisor** | **(202) 419-0711** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____

**Mindy E. Weinstein,**
FoR   **Acting Director**

**MAR 23 2016**

*(Date Mailed)*

Enclosures(s)

cc:
**Makita Miller**
**Human Resources / EEO Compliance Officer**
**GWU HOSPITAL**
**900 23RD STREET, NW**
**Washington, DC 20037**

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>**within 90 days**</u> of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 846-2015-33295 |

| | |
|---|---|
| **D.C. Office Of Human Rights** | and EEOC |
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Grace Kaiyuan** | **(703) 495-8634** | 10-18-1964 |

| Street Address | City, State and ZIP Code |
|---|---|
| **2948 American Eagle Blvd, Woodbridge, VA 22191** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **GWU HOSPITAL** | **500 or More** | **(202) 715-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **900 23rd Street, NW,  Washington, DC 20037** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| | | | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN | | | | Earliest: **10-03-2014**   Latest: **07-16-2015** |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | | | | |
| ☐ OTHER *(Specify)* | | | | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I have worked for Respondent as a Medical Technologist since 2009. My race is Asian, and my national origin is Korean. Jill Sansing became my supervisor in spring of 2014. I have been targeted for harassment and intimidation by Ms. Sansing. For example, she made multiple comments about my accent and my job and would ignore me when I am talking. She would also ask me to do menial tasks that do not fall under my responsibilities and would deny my requests for PTO even though she approved the requests of my coworkers.

Management has treated my coworkers, all of whom are of American origin and are not Asian, better than they have treated me. In December 2014, Ms. Sansing issued a written employee corrective action report alleging that I failed to cover my shifts even though I had sufficiently found coverage for my absences. My coworkers, who are American and non-Asian and had more unplanned absences than I did, never received a written warning. I received a second warning in January 2014 because the evidence I had provided in response the first warning, to prove that management's

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jul 30, 2015**     *(signature)*  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 846-2015-33295 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

treatment of me was inconsistent with their treatment of other employees, involved records of the blood bank's communication book. I contacted the EEOC in January 2015 and did a pre-assessment test for discrimination. I notified Respondent about my contact with the EEOC and my plan to pursue a claim of discrimination. Management agreed to meet with me in February and they decided to "push a reset button," so the warnings on my record would be removed and I would start with a "clean slate."

I was terminated on July 16, 2015. Though the official reason given for my termination is that I was sleeping on the job, I believe the corrective action protocol was not appropriately followed in my case. Additionally, my job position had been advertised online about half a month before my termination. I believe the reason for my termination was pretext for discrimination and retaliation for engaging in protected EEO activity.

I believe I was subject to the above treatment due to discrimination on the basis of my race (Asian) and national origin (Korean) and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

131 M STREET N.E.
WASHINGTON, DC 20507

2015 JUL 30  PM 2: 11

EEOC
WASHINGTON FIELD OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jul 30, 2015** _____ *Date*   *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Status Line: (866) 408-8075
Washington Direct Dial: (202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740

May 31, 2016

Grace kaiyuan
9699 Banting Drive,
Fairfax, VA 232032

Re:   Grace Kaiyuan v. George Washington University Hospital
      EEOC Charge No.:570-2015-33295

Dear Ms. Kaiyuan:

Thank you for your request for a copy of your Charge file. You requested file disclosure under Section 83 of the Equal Employment Opportunity Commission's Compliance Manual.

We have reviewed your request and will be processing it soon.

If you have any questions in the interim, please call our Records Disclosure Coordinator Louise C. Dixon at (202) 419-0721.

Sincerely,

Louise C. Dixon, Paralegal Specialist
File Disclosure Coordinator

June 07, 2016

Mindy Weinstein
131 M Street, N. W., Suite
4NW02F Washington, D.C. 20507

**Re: Reconsideration Request**
Kaiyuan v GWU Hospital
Charge Number 846-2015-33295

Dear Ms. Mindy Weinstein,

This letter is in response to the Dismissal and Notice of Rights dated 23 March 2016, providing notice that the "EEOC is unable to conclude that the information obtained establishes violations of the statutes." The purpose of this letter is to respectfully request reconsideration of the Commission's determination, such that investigation into the below-cited allegations is re-opened.

I, Grace Kaiyuan, allege that I was subjected to employment discrimination based on my membership in one or more of the following protected categories: (1) Race/color; (2) National origin; and (3) Retaliation, which directly resulted from my opposition to this discrimination, as well as my participation in the EEO process.

<u>**Facts Germane to the Discrimination.**</u>

I am an Asian woman of Korean descent. Although I am fluent in English, English is my second language; I speak with a cognizable non-native speaker accent, which in no way materially interferes with my ability to perform my job duties. I have been under the employ of Respondent as a Medical Technologist since 2009. Ms. Sansing became my supervisor in the spring of 2014. Prior to 2014, I was a fully successful employee, never before subject to any disciplinary action by my employer. Under Ms. Sansing's supervision, I have been the target of her discrimination since December 2014, and treated differently from similarly situated employees.

Specifically, Ms. Sansing made repeated, inappropriate, and discriminatory comments about my accent. For instance, Ms. Sansing would say, "you talk funny" or "I am having a hard time to understand you" when speaking to her. Ms. Sansing would also use her hand (motioning me to stop talking) or show unseemly facial expressions when trying to speak to her.
Ms. Sansing's comments were purposefully made in front of my fellow coworkers and appear to have been made to embarrass me. Upon ridiculing my accent, Ms. Sansing isolated me from my fellow employees by ignoring me when I was addressing her or communicating with my coworkers. Further, once the ridicule of my accent began, I also noticed that Ms. Sansing consistently required that I perform menial tasks outside of my designated job responsibilities. Notably, once this disparate treatment based on my national origin and/or race commenced, Ms. Sansing would deny my requests for PTO, even when she would approve the requests of my coworkers. The constant ridicule made it difficult for me to do my job. It is also my belief that upon filing my first discrimination complaint, Ms. Sansing's treatment of me became even more

hostile. Ms. Sansing continued to take away my principle job duties, thereby significantly diminishing my substantive job responsibilities. Ms. Sansing did not subject any of the other employees, all of whom are of American descent, in a similar manner. The frequent, severe, and offensive conduct linked to my Korean origin and Asian race created a hostile workplace, which I believe is in violation of my rights.

Moreover, in December 2014, Ms. Sansing issued a written employee corrective action report alleging that I failed to cover my shifts even though I had sufficiently found coverage for my absences. My coworkers, who are American and non-Asian and have had more unplanned absences than I did, never received a similar written warning. As referenced above, I contacted the EEOC in January 2015 and did a pre-assessment test for discrimination. I notified Respondent about my contact with the EEOC and my plan to pursue a claim of discrimination. Management agreed to meet with me in February and they decided to "push a reset button," so the warnings on my record would be removed asserting that I would start with a "clean slate." At this time, the discriminatory acts intensified. Specifically, Ms. Sansing made me scrub behind the centrifugation, when my other coworkers were performing their job duties.

Despite Respondent's assurances, I was terminated on July 16, 2015. I believe the corrective action protocol was not appropriately followed in my case. Additionally, my job position had been advertised online weeks prior to my termination. I believe the reason for my termination was a pretext for discrimination and in retaliation for engaging in protected EEO activity. I believe I was subject to the above treatment due to discrimination on the basis of my race (Asian) and national origin (Korean) and in retaliation for engaging in protected activity, in violation of my rights.

**Request**

Accordingly, I respectfully request reconsideration of the Commission's determination, such that investigation into the above-cited allegations is re-opened.

Best regards,

Grace Kaiyuan

# THE GEORGE WASHINGTON UNIVERSITY HOSPITAL
## EMPLOYEE CORRECTIVE ACTION REPORT

*#1 Attempt*

| Employee Information | |
|---|---|
| **Employee Name:** Grace Kaiyuan | **Date:** 12.14.14 |
| **Department:** Blood Bank | **Job Title:** Medical Technologist III |
| **Issued By:** Jill Sansing | **Job Title:** Blood Bank manager |

| Corrective Action (check appropriate level) | | | |
|---|---|---|---|
| X | Preventive Counseling | ☐ | Suspension |
| ☐ | Written Warning | | From:      To: |
| ☐ | Final Written Warning | | Reason for Suspension: |
| ☐ | Termination | | |

## Incident

**Briefly State Facts or Events Leading to the Filing of the Report**

Grace has had 6 unplanned absences since she started her full time job with the FDA. This has had a negative impact on the ability of the Blood Bank team to provide quality care to our patients.

## History of Corrective Action

**Has Employee Been Previously Counseled or Disciplined for Same/Similar Reason(s)?**

X ☐ No      ☐ Yes - Date(s):

Reason:                    Level of Corrective Action:

Documented:   ☐ Yes   ☐ No

## Plan of Action

**Briefly State What Employee Must Do to Improve**
Decrease the number of unplanned absences.

**Employee Comments**

---

| Employee's Signature | Date | Human Resources Dir. Signature | Date |
|---|---|---|---|

| Supervisor's Signature | Date | Administrative Representative Signature | Date |
|---|---|---|---|

*Failure of employee to improve may result in further corrective action up to and including immediate employment termination.*
*Employee's signature indicates receipt of this report only, not necessarily agreement with content. Employee may attach additional comments on the reverse side of this form.*

*Revised 3/1/2009*

# THE GEORGE WASHINGTON UNIVERSITY HOSPITAL
# EMPLOYEE CORRECTIVE ACTION REPORT

#2 Attempt

## Employee Information

| | |
|---|---|
| **Employee Name:** Grace Kaiyuan | **Date:** 12.14.14  presented on:   after discussion |
| **Department:** Blood Bank | **Job Title:** Medical Technologist III |
| **Issued By:** Jill Sansing | **Job Title:** Blood Bank manager |

## Corrective Action (check appropriate level)

| | | | |
|---|---|---|---|
| X | Preventive Counseling | ☐ | Suspension |
| ☐ | Written Warning | | From:     To: |
| ☐ | Final Written Warning | | Reason for Suspension: |
| ☐ | Termination | | |

## Incident

**Briefly State Facts or Events Leading to the Filing of the Report**

Grace has had 4 unplanned absences since she started her full time job with the FDA on August 25th. This has had a negative impact on the ability of the Blood Bank team to provide quality care to our patients. Regardless of finding her own *coverage* it is Grace's responsibility to cover her shift and failure to do so compromises Blood Bank operations. Failure to comply will result in further disciplinary action.

## History of Corrective Action

**Has Employee Been Previously Counseled or Disciplined for Same/Similar Reason(s)?**

X☐ No     ☐ Yes - Date(s):

Reason:                           Level of Corrective Action:

Documented:   ☐ Yes     ☐ No

## Plan of Action

**Briefly State What Employee Must Do to Improve**
Decrease the number of unplanned absences.

**Employee Comments**

| | | | |
|---|---|---|---|
| Employee's Signature | Date | Human Resources Dir. Signature | Date |
| Supervisor's Signature | Date | Administrative Representative Signature | Date |

Revised 3/1/2009

Search Careers      Career Center      Logout

# Medical Technologist III (Full Time)

| | |
|---|---|
| **Job Code:** | 161008 |
| **Facility:** | **The George Washington University Hospital** |
| **Location:** | WASHINGTON, DC US |
| **Region:** | Mid-Atlantic |
| **Travel Involved:** | None |
| **Job Type:** | Full Time |
| **Job Level:** | |
| **Minimum Education Required:** | Bachelor's Degree |
| **Skills:** | |
| **Category:** | Allied Health |
| **FTE:** | 1.0 |
| **Position Summary:** | |

- To perform specimen collection, specimen processing, and administrative tasks associated with clinical assessment of patients.
- Performs special task such as coordinating reference laboratory requests or oversight of shift workflow.
- Services as liaison to house staff, patient care services, medical students, physicians, etc.to ensure quality patient care.

**Requirements**

- MT(ASCP) or eligible to obtain, plus two years of Medical Technologist experience, - or Bachelors degree in Biological Science plus two years of related experience is necessary.
- As required by the U.S. Nuclear Regulatory Commission (NRC), employee with access to blood irradiator in the Transfusion Service section must be subjected to fingerprinting and a Federal Bureau of Investigation (FBI) identification and criminal history records check.

To submit your application for this job, select how you heard about the job and then click the "Submit Your Application" button below.

## How did you hear about this job? [ -- ▼ ]

[ **Submit your Application** ]

---

Email this job to a friend!

| | |
|---|---|
| Your Name: | [_____] |
| Your friend's email address: | [_____] |

*This Job was posted for 15 days.*

*It means that the management had a plan to terminate me.*

**From:** Kaiyuan, Grace
**To:** ▉
**Subject:** FW: From Grace Kaiyuan
**Date:** Monday, January 05, 2015 12:43:00 PM
**Attachments:** Almaze (2).pdf
Antoine.pdf
Bekele_eCopy Doc.pdf
Emran_eCopy Doc.pdf
Eric_eCopy Doc.pdf
Garev_eCopy Doc.pdf
Gloria_eCopy Doc.pdf
Grace_eCopy Doc.pdf
Jean_eCopy Doc.pdf
Jill_eCopy Doc.pdf
Josey_eCopy Doc.pdf
Kaz_eCopy Doc.pdf
Luis_eCopy Doc.pdf
Lynn_eCopy Doc.pdf
Marlon_eCopy Doc.pdf
Roger_eCopy Doc.pdf
Temi_eCopy Doc.pdf

FYI

**From:** Kaiyuan, Grace
**Sent:** Monday, January 05, 2015 12:20 PM
**To:** Miller, Makita L
**Cc:** Kaiyuan, Grace; lkaiyuan@aol.com
**Subject:** RE: From Grace Kaiyuan

Ms. Makita,

I hope this information helps you towards your investigation.
Based on this information, not only should I have received an Employee Corrective Action
Report, but also some employees (shown below) who had 4 or more unplanned absences
throughout the year.

According to my Employee Corrective Action Report Jill had stated on my document, "Grace
has had 6 unplanned absences since she started her full time job with the FDA. This has had
a negative impact on the ability of the Blood Bank team to provide quality care to our
patients."

I disagree with Jill's statement.

- There is a reason to support which is that I have followed Jill's internal Policy
  to find own my coverage with both parties agreed signature.
- When I am not able to work for certain dates, I always look for coverage to
  avoid negative impact for work flow and patient care.
- To compare others employees did not even search for their schedule coverage.
  That caused the negative impact for patient care and work flow at the blood
  bank.
- Jill did not mention that I caused the negative impact with schedule exchange
  with others for many months.

What Jill did to me is unfair and in retaliation of my second job she continually harasses me
and gives me wrong information.

*[handwritten in margin]* please See two copies of Email from Jill "find your own coverage!"

As you can see below, I missed a total of 3 days of unplanned leave of absence which included a car accident with a doctor's note.

In 2014, these are the list of employees at the Blood Bank who had unplanned absences:

|  | Name | Called in sick/Called in not to work on the scheduled date | Notified for being late |
|---|---|---|---|
| 1 | Almaz | 1 | 1 |
| 2 | Antoine | 3 | |
| 3 | Bekele | 5 | |
| 4 | Emran | 6 | |
| 5 | Eric | 13 | 2 |
| 6 | Garey | 15 | 1 |
| 7 | Gloria | 6 | 1 |
| 8 | Grace | 2 and 1(FMLA) | |
| 9 | Jean | 2 | |
| 10 | Jill | 4 and others | 3 |
| 11 | Josey | 2 | |
| 12 | Kaz | 5 | |
| 13 | Luis | 5 | |
| 14 | Lynn | 8 | 3 |
| 15 | Marlon | 3 | |
| 16 | Temi | 5 | 1 |
| 17 | Roger | 3 | |

The list above is based on the daily communications book at the blood bank.
Copies are enclosed in each employees' unplanned absence with the specified dates.

Additionally, I want to state that there is an *Internal Leave Policy* that Jill created at the blood bank.
Jill puts up the work schedule two months ahead of the time and employees are not allowed to request PTO or time off during those days.
- Doing so, Jill made an alternative way where employees could be off using the schedule change request form (Internal Leave Policy).
- This form allows employees to find their own coverage.
- Each side of the party has to agree and work with the confirmation of one's signatures.

It requires a 72 hour notice to Jill. (Since I am working only for the weekends, I could not meet this requirement. However, Jill did not mention it as "unscheduled absence", Jill asked me to fill out the PTO form the next day.)

**From:** Miller, Makita L [mailto:MakitaL.Miller@gwu-hospital.com]
**Sent:** Tuesday, December 23, 2014 5:30 PM
**To:** Kaiyuan, Grace
**Subject:** RE: From Grace Kaiyuan

Thank you Grace.

We will discuss upon my return.  The manager is out on vacation at this point therefore the investigation into your concern will have to wait until I return on 1/5/15.

Thank you for the additional information.

Regards
Makita


Makita L Miller, M.A., PHR
Assistant Director, Human Resources
The George Washington University Hospital
900 23rd Street, NW
Washington, DC 20037
(202)715-5087
(202)715-4402 (Fax)
Please consider the environment before printing this email




**From:** Kaiyuan, Grace [mailto:Grace.Kaiyuan@fda.hhs.gov]
**Sent:** Tuesday, December 23, 2014 9:44 AM
**To:** Miller, Makita L
**Subject:** From Grace Kaiyuan

Ms. Makita,

Attached is the copies of the what Jill gave to me. In addition, I added ER document  related my car accident on 12/06/2014.

Have a great Holidays with family and friends.

Regards,
Grace Kaiyuan

**From:** eCopy@fda.gov [mailto:eCopy@fda.gov]
**Sent:** Tuesday, December 23, 2014 9:29 AM
**To:** Kaiyuan, Grace
**Subject:** Scanned document from eCopy@fda.gov

UHS of Delaware, Inc. Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this information is prohibited, and may be punishable by law. If this was sent to you in error, please notify the sender by reply e-mail and destroy all copies of the original message.

# October schedule

**Sansing, Jill**

**Sent:** Tuesday, September 02, 2014 4:17 PM

**To:** Tony [tonytavares2000@gmail.com]; Marlon Webb [webb_family5@yahoo.com]; Anna Fejeran [abfejera@cnmc.org]; Asgedom, Almaz; Balaum, Emran; Brill, Luis; J Delrosario [Josie.Delrosario@provhosp.org]; Kaiyuan, Grace; Morch, Garey; Mulugeta, Bekele; Parker, Jean; Posey, Lynn; Reyes, Gloria; Sansing, Jill; Shirazi, Kazem; Adebiyi, Temi; Webb, Marlon; Williams, Roger

The final October schedule is out and on the board. Please check it to make sure I haven't made any mistakes. If you want PTO, please find coverage with no OT. If you want time off in November, please give me a PTO request soon because I'm working on it the November schedule now. Don't forget to time stamp your request and to put your approved days off on the PTO calendar.

Thanks,
Jill


Jill Sansing MT (ASCP)
Manager, Transfusion Services
George Washington University Hospital
Washington, DC 20037
202-715-4694

# June schedule

## Sansing, Jill

**Sent:** Tuesday, April 29, 2014 4:36 PM

**To:** Adebiyi, Temi; Asgedom, Almaz; Balaum, Emran; Brill, Luis; Fejeran, Anna Marie; Kaiyuan, Grace; Morch, Garey; Mulugeta, Bekele; Parker, Jean; Posey, Lynn; Reyes, Gloria; Roberts, Eric; Sansing, Jill; Shirazi, Kazem; Tavares Da Souza, Antoine; Webb, Marlon; Williams, Roger

---

The June schedule is out for everyone's review... as always... this is a very creative schedule so PLEASE CHECK ME AND MAKE SURE I HAVEN'T MISSED ANYTHING!

The schedule will be final on Monday, May 12th. After that if you want off you have to find your own coverage, with no OT.

Thanks for your help with this!

Jill


Jill Sansing MT (ASCP)
Manager, Transfusion Services
George Washington University Hospital
Washington, DC 20037
202-715-4694

2014 NOV 08 05:02:04

THE GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23ʳᵈ STREET NW, WASHINGTON, DC 20037

SCHEDULE CHANGE REQUEST

Name: _Grace Kaiyuan_ Date of Request _Nov. 8. 2014_

The following person has agreed to work for me on: ____Nov. 30. 2014 ( Sunday )____
(Day/Date)

I/we understand that this agreement must be upheld and presented to the supervisor with at least
72 hours notice. The same work schedule and assignments will be carried out as outlined on the
posted schedule.

_Lynn Posey_
Person working the change (print name)

_Lynn Posey 11-9-14_
Person working the change (sign & date)

_Grace Kaiyuan_
Person requesting the change (print name)

_Grace Cai_ _Nov. 8 2014_
Person requesting the change (sign & date)

_____
Supervisor/Manager Signature & date

Approved ☐     Denied ☐

THE GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23RD STREET NW, WASHINGTON, DC 20037

SCHEDULE CHANGE REQUEST

Name: _Grace Kaiyuan_ Date of Request _NOV 8. 2014_

The following person has agreed to work for me on: _Dec. 28, 2014_
(Day/Date)

I/we understand that this agreement must be upheld and presented to the supervisor with at least 72 hours notice. The same work schedule and assignments will be carried out as outlined on the posted schedule.

_Lynn Posey_
Person working the change (print name)

_Lynn Posey_
Person working the change (sign & date)

_Grace Kaiyuan_
Person requesting the change (print name)

_Grace Kaz_ _Nov. 8. 2014_
Person requesting the change (sign & date)

_Jill Jansing_ _11-10-14_
Supervisor/Manager Signature & date

Approved [✓]   Denied [ ]

THE GEORGE WASHINGTON UNIVERSITY HOSPITAL
900 23RD STREET NW, WASHINGTON, DC 20037

SCHEDULE CHANGE REQUEST

Name: *Grace Kaiyuan*   Date of Request   10 / 11 / 2014

The following person has agreed to work for me on: _____ 10 / 19 / 2014
(Day/Date)

I/we understand that this agreement must be upheld and presented to the supervisor with at least 72 hours notice. The same work schedule and assignments will be carried out as outlined on the posted schedule.

*Lynn Posey*
Person working the change (print name)

*Grace Kaiyuan*
Person requesting the change (print name)

*Lynn Posey*   10-11-14
Person working the change (sign & date)

*Grace Kaj*   10/11/14
Person requesting the change (sign & date)

_____
Supervisor/Manager Signature & date

Approved ☐   Denied ☐

# The George Washington University Hospital
## Scheduled and Unscheduled Time Off Request
This form should be used to request time off in advance and to designate how unscheduled absences will be classified and paid.

Name: _Grace Kaiyuan_   Date: _10/12/14_

Department: _____   Position: _____

Type of Leave
(Select only one)
☑ PTO   ☐ PTO designated as Accrued Sick and Safe Leave

☐ ELB   ☐ Leave without Pay   ☐ Bereavement

Time Off Requested - Full Day Increments

1st Day Off: _10/19/14_   Return Date: _10/24/14_

Time Off Requested - Partial Day Increments (Specify Time)

Date: _____

Hours - From: _____   To: _____

Employee Signature: _____   Date: _10/12/14_

Request:   ☐ Approved   ☐ Denied

Comments: _participate event ..._

_____

Department Manager Signature: _____   Date: _____

## The George Washington University Hospital
## Scheduled and Unscheduled Time Off Request
This form should be used to request time off in advance and to designate how
unscheduled absences will be classified and paid.

Name: _Grace Kaiyngn_    Date: _Sep. 26. 2014_

Department: _____    Position: _____

Type of Leave    [X] PTO    [ ] PTO designated as Accrued Sick and Safe Leave
(Select only one)
   [ ] ELB    [ ] Leave without Pay

Time Off Requested - Full Day Increments

1st Day Off: _Dec. 19_    Return Date: _Dec. 26_
(19, 20, 21)

Time Off Requested - Partial Day Increments

Date: _____

Hours - From: _____    To: _____

Reason for Request:

_____        PLEASE give me
_____        a new form - just so
_____        it will be neat + a
                       trade form for Antoine -
                       Thx!
                       Jill

Employee Signature: _Grace Kaiji_    Date: _Sep 26 2014_

Request:    [✓] Approved    [ ] Denied  → 12/21/14
                                            to
Comments:  12-19+20,

Antoine is off on 12-21. + Asked many months
ago.

Department Manager Signature: _Jill Sansing_    Date: _10-1-14_

2014 SEP 26 22:30:15

*[handwritten: Denied Twice]*
*[handwritten: (1) Requested Sep 26, 2014 for December]*
*[handwritten: (2)      "      Nov    for Janu. 2015]*

# FW: PTO Jan 2nd

## Kaiyuan, Grace [Grace.Kaiyuan@fda.hhs.gov]

**Sent:** Saturday, November 15, 2014 6:41 AM

**To:** ikaiyuan@aol.com

**Cc:** Kaiyuan, Grace

---

**From:** Sansing, Jill [mailto:Jill.Sansing@gwu-hospital.com]
**Sent:** Wednesday, November 12, 2014 1:47 PM
**To:** Kaiyuan, Grace
**Subject:** PTO Jan 2nd

I am so sorry but Antoine is off on Jan. 2nd so I can't approve your time off for Friday night Jan 2nd. Antoine is off until Sat. 1-3. Only 1 person can be off per shift. **Please, please, please, please** check the PTO calendar before you ask off. I am sorry I didn't see this. I am working on the Jan. schedule and saw you were both off. I am very sorry I approved your time for Friday before I saw this.
Jill

Jill Sansing MT (ASCP)
Manager, Transfusion Services
George Washington University Hospital
Washington, DC 20037
202-715-4694

UHS of Delaware, Inc. Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this information is prohibited, and may be punishable by law. If this was sent to you in error, please notify the sender by reply e-mail and destroy all copies of the original message.

# The George Washington University Hospital
## Scheduled and Unscheduled Time Off Request
This form should be used to request time off in advance and to designate how
unscheduled absences will be classified and paid.

Name: _Grace Kaiyuan_     Date: _11/9/14_

Department: _Blood Bank_    Position: _Tech; Medical Technologist_

Type of Leave   ☒ PTO   ☐ PTO designated as Accrued Sick and Safe Leave
(Select only one)
         ☐ ELB   ☐ Leave without Pay   ☐ Bereavement

### Time Off Requested - Full Day Increments

1st Day Off: _Jan. 2, 3 & 4th, 2015_ Return Date: _Jan. 9th 2015_
         ( Fri, Sat. Sun )

### Time Off Requested - Partial Day Increments (Specify Time)

Date: _____

Hours - From: _____ To: _____

Employee Signature: _____ Date: _____

> _Jan 2_
> ↓
> _Denied_
> Applied on 11/9/14.

Request: ☐ Approved    ☐ Denied

Comments: " _Personal_ "

* Previous of Time Request was wrong Information on
Dates, It is a Correct on Date for PTO ~~This~~ Request.
Thank you. Grace Kaiyuan

Department Manager Signature: _____ Date: _____

# The George Washington University Hospital
## Scheduled and Unscheduled Time Off Request
This form should be used to request time off in advance and to designate how
unscheduled absences will be classified and paid.

Name: _Grace Kaiyuan_   Date: _11/2/14_

Department: _Blood Bank; Lab_  Position: _Tech ( Medical Technologist)_

Type of Leave  ☒ PTO  ☐ PTO designated as Accrued Sick and Safe Leave
(Select only one)
        ☐ ELB  ☐ Leave without Pay  ☐ Bereavement

Time Off Requested - Full Day Increments _It's from Jan 2, 3 & 4th, Not from 1st of Jan_

1st Day Off: _Jan. 1st /2015_  Return Date: _Jan, 9th 2015_
       _2nd & 3rd_

Time Off Requested - Partial Day Increments (Specify Time)

Date: _____

Hours -  From: _____  To: _____

Employee Signature: _____  Date: _____

Request:  ☐ Approved  ☐ Denied

Comments: _Personal._

_____

_____

Department Manager Signature: _____  Date: _____

C:\Users\gwuSansIJ\AppData\Local\Microsoft\Windows\Temporary Internet
Files\Content.IE5\3GUGZIOJ\ScheduledTimeOffRequest[1].doc

Rev. 2-2014

2014 SEP 26 22:30:15

## The George Washington University Hospital
### Scheduled and Unscheduled Time Off Request
This form should be used to request time off in advance and to designate how unscheduled absences will be classified and paid.

Name: _Grace Kaiyngn_   Date: _Sep. 26. 2014_

Department: _____   Position: _____

Type of Leave    [X] PTO   [ ] PTO designated as Accrued Sick and Safe Leave
(Select only one)
      [ ] ELB   [ ] Leave without Pay

Time Off Requested - Full Day Increments

1st Day Off: _Dec. 19_   Return Date: _Dec. 26_
      ( 19, 20, 21)

Time Off Requested - Partial Day Increments

Date: _____

Hours -  From: _____   To: _____

Reason for Request: _____

PLEASE give me
a new form - just so
it will be neat + a
trade form for Antoine-
Thx!
Jul

_____

Employee Signature: _Grace Kaji_   Date: _Sep. 26 2014_

Request:   [✓] Approved   [ (Denied) ] → 12/21/14
Comments: 12-19+20,      ↘ to

Antoine is off on 12-21. + Asked many months ago.

Department Manager Signature: _Jul Sonsing_   Date: _10-1-14_

Antoine

Sent from my iPhone

On Aug 19, 2014, at 15:42, lkaiyuan@aol.com wrote:

Hello Mr. Antoine,

This is Grace Kaiyuan.
I hope all is well.

I just wanted to share this e-mail with you, and I will see you this   week Friday.

-Grace Kaiyuan

From: Jill.Sansing@gwu-hospital.com
To:     lkaiyuan@aol.com
Sent: 8/19/2014     3:02:38 P.M. Eastern Daylight Time
Subj: RE: Post-Meeting     Thoughts

Thank    you for sharing your thoughts with me. I think you are blowing what I said     out of proportion, making it much bigger that it is. I would be less than     a good  manager if I didn't share what I've heard from others and ask     you to pay attention to how tired you are. You are not the only person     I've had this conversation with. There are others that have 2 jobs that I've cautioned them about how tired they seem to be.      If you have had 2 FT jobs while you were at GW and I've been here, then you     did indeed to do a fantastic job  because I would have never known!     You have always shown a professional, caring attitude. I am going on the     assumption that this will be the first time you've had 2 FT jobs since     I've been the manager.     You are a valuable member of the Blood Bank and I am blessed to have you working here. I just want you to be careful.     Jill

From: lkaiyuan@aol.com [mailto:lkaiyuan@aol.com]
Sent: Tuesday, August 19, 2014 2:51 PM
To: Sansing,     Jill
Subject: Post-Meeting     Thoughts

Hello    Ms. Jill,

After    the meeting we had this morning, I felt very displeased.
Especially,     towards the statements of which you spoke of my fellow co-workers becoming     irritated towards me as I have two jobs and am physically tired. In all     honesty, I believe these statements are not     true.

*(handwritten annotations):*
① Harassed in Her office and made Work Environment a Hostile.
• Intimidated.
Sent to Jill
Aug. 19, 2014
• National Origin / Race.

2

As   you heard the following statements of: "Since Grace works two jobs she is always tired", "Due to her tiredness, she has been very irritating to co-workers/partners, and is hard to    work with" was very disheartening. I believe these statements    are false, as I developed very close relationships with my co-workers and    we all work very hard together. I believe we definitely get along as a    team in the lab. In addition, I thought I have been providing    compliance for the lab to result in great customer service,    and to continue meeting the criteria for the turn around time to    patients as well as my fellow co-workers.

Therefore, I am    in the midst of deciding whether I should hold a survey/poll with the lab    partners I have worked with to prove these statements are wrong.    Furthermore, I am at unease when you kept asking me, "Are you sure that you are able    to work for the weekend?", "Aren't you going to get tired?", "If you're tired, you will become easily irritated and irritate your co-workers". With these statements/questions, it allows me to gather an implication that you would not like me to continue working    at GWUH. For this reason, I felt a mix of emotions as I was very    shocked to hear these stories and was very discouraged from this    meeting. I want to let you know that having an additional job can be    quite tiring, but it does not mean that I will not give my 100% dedication    and effort to GWUH and to my co-workers.

Thus,    I wanted to let you know how I feel. If I can assure you, I am doing my    best all the time no matter the situation.

-Grace    Kaiyuan

UHS of Delaware, Inc. Confidentiality Notice: This e-mail message,    including any attachments, is for the sole use of the intended    recipient(s) and may contain confidential and privileged information. Any    unauthorized review, use, disclosure or distribution of this information    is prohibited, and may be punishable by law. If this was sent to you in    error, please notify the sender by reply e-mail and destroy all copies of    the original   message.

=

UHS of Delaware, Inc. Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this information is prohibited, and may be punishable by law. If this was sent to you in error, please notify the sender by reply e-mail and destroy all copies of the original message.

## Kaiyuan, Grace

| | |
|---|---|
| **From:** | Kaiyuan, Grace <Grace.Kaiyuan@gwu-hospital.com> |
| **Sent:** | Sunday, December 14, 2014 8:02 PM |
| **To:** | Kaiyuan, Grace |
| **Cc:** | ikaiyuan@aol.com |
| **Subject:** | FW: Re: Post-Meeting Thoughts |

From: Kaiyuan, Grace
Sent: Saturday, September 06, 2014 1:39 AM
Subject: FW: Re: Post-Meeting Thoughts

From: ikaiyuan@aol.com [ikaiyuan@aol.com]
Sent: Saturday, September 06, 2014 1:37 AM
To: Kaiyuan, Grace
Subject: Fwd: Re: Post-Meeting Thoughts

-----Original Message-----
From: Ikaiyuan <Ikaiyuan@aol.com>
To: tonytavares2000 <tonytavares2000@gmail.com>
Sent: Fri, Aug 22, 2014 1:11 pm
Subject: Re: Post-Meeting Thoughts                    *Aug 22, 2014*

Hello Mr. Antoine,
I am so glad to see your response.
No , I did not let Olga knows about this.

Anyhow, I will see you tonight and talk about it and others........

See you,

Best regards,
Grace kaiyuan

In a message dated 8/22/2014 12:57:57 P.M. Eastern Daylight Time,
tonytavares2000@gmail.com writes:
  Grace
  I just read this email
  Unbelievable!
  She need to tell us where she got those comments from because you
mostly   work with me and I never had that kind of conversation with
her.
  Why is she constantly making up stories?
  I really feel like taking it to HR. Is Olga aware of these
allegations?

January 30, 2016

Mark Young
131 M Street, N. W., Suite 4NW02F
Washington, D.C. 20507

Kaiyuan v GWU Hospital
Charge Number 846-2015-33295

Dear Mr. Mark Young,

I am responding to your letter from January 12, 2016, regarding the evidence that the U.S. Equal
Employment Opportunity Commission (EEOC) gathered in my case against GWU HOSPITAL.
Although it was found "unlikely" that I was subject to discrimination during my time as an
employee at George Washington University, I am responding and taking the opportunity
provided to me to present significant, pertinent information that supports my allegations in an
attempt to overcome my case.

I stand by my belief that my termination was unwarranted. Moreover, I firmly believe that I was
subject to unfair and unlawful discrimination in the workplace ultimately leading to my dismissal
as an employee at the George Washington University Hospital (GWUH).

My initial filed complaint with the EEOC was not my first. On December 31, 2014, I reached out
to the GWUH Human Resources (HR) in regards to the issues I was dealing with:
'communication concerns', 'job statuses', and 'time and attendance'. Unfortunately, an
investigation found that there were no inconsistencies. The return letter from GWUH HR goes
on to point out that they "respect my perception", "take these concerns very seriously" and that
they "foster an environment free from retaliation". As a former employee of The George
Washington University Hospital I did not feel this way. The discriminatory behavior I was
subject to was not a mere *perception*.

It is known that my employment was terminated because I had fallen asleep while on duty; *Based on discrimination on the basis of my race (Asia) & national origin (Korea)*
however, I disagree of which I had specifically fallen asleep during my break time. Even so, I
view that my termination was deliberated in advance and was a retaliatory act by management.
Before my termination, a similar incident occurred where a previous co-worker of mine, Mr.
Antoine Tavares, was working the night shift with another tech who had fallen asleep and was
not able to complete his duties. Unlike my situation which led to my termination, the tech who
fell asleep during his duty did not receive any warning or disciplinary action from our manager,
Ms. Jill Sansing. Furthermore, all night shift employees sleep during one's own break time. More
importantly –they were *not* terminated. In this situation, I was not treated and disciplined in the
same manner, further suggesting that I did not receive equal treatment from my manager, Ms. Jill

Sansing, who was aware that a fellow co-worker had fallen asleep *and* did not complete his work responsibilities, or the fact that other employees sleep during their own breaks.

Furthermore, I believe I was not fairly treated in regards to the corrective action procedures. The consequences served upon me by management, were ill advised, rash, and severe. On numerous occasions, I was unfairly treated as an employee and believe that I was targeted throughout my employment. In regards to unfair treatment, I believe the corrective actions taken against me were often unjustified. Not only was I victim to discriminatory punishment, but was also less favored compared to other employees. Other GWUH employees were not subject to the same corrective action measures as I was and were often shown leniency.

As previously stated, I believe my termination was prearranged, as I made a crucial error falling asleep on duty (although during my break period), management took the opportunity to dismiss me. Furthermore, I stand firm by my belief that the discipline I received was unwarranted, unique to only me, and severe. More importantly, the disciplinary measures administered by management, upon me, were acts of discrimination in the form of retaliation and harassment. Included in this letter are documents, significant and relevant, that support my allegations. It is important to take note of the timeline, witnesses, and other GWUH employees when looking at these documents and to re-investigate from all perspectives of this case—not only management. I encourage you, if possible, to also contact witnesses (contact information provided below) who were involved in my incidents. It is important for me to state that the *discipline* and *harassment* I faced in the GWUH workplace was unfair, and continuously increased after each incident (in the timeline provided) and became ever more debilitating as I attempted to put my best foot forward as a Medical Technologist at The George Washington University Hospital.


Sincerely,

Grace Kaiyuan

Grace Kaiyuan

**Significant Information and Evidence that Supports My Allegations**

### Attachment A
### *Online Job Posting*
### Job Code: 161008, Medical Technologist III (Full Time)

*Intimidated & Retaliat* [handwritten]

On July 15, 2015, my position at George Washington University Hospital, as a Medical Technologist III Full Time, was posted on: https://uhs.ats.hrsmart.com.  At the time this job was posted, I still maintained my position as a Medical Technologist III at GWUH. To my knowledge, all full time Medical Technologist III positions were filled.  For management to have posted my position online indicates that a plan to dismiss/terminate me was in place and was inevitable.

### Attachment B and Voice Recording A
### *Attachment B: GWUH Corrective Action Report (#1)*
### Voice Recording A: *Meeting with Ms. Jill Sansing (December 14, 2014)*

*(1st intimidated / Harassed / with Discrimination* [handwritten]

Ms. Jill Sansing, GWUH Blood Bank manager, approached me on December 14, 2014, to discuss my attendance. More specifically, Ms. Sansing suggested, "Grace has had **6** unplanned absences since she started her full time job with the FDA on August 25th, 2014. This has had a negative impact on the ability of the Blood Bank team to provide quality care to patients". This marks the first incident (and first time an *Employee Corrective Action Report* that was filed against me) between management, specifically amongst Ms. Sansing and myself. The result of the meeting was a "verbal warning"; the course of corrective action taken was "preventative counseling". I am both responsible and reliable as a worker and believe I never put the quality of patient care at risk. I did not comprehend my manager's course of action, and for these reasons did not feel content in signing the *Employee Corrective Action Report* form Ms. Sansing provided, until I had spoken with an attorney.

The *Employee Corrective Action Report* form that Ms. Sansing presented me with, is proof of both unjustified discipline and negative evaluation. The warning, or "preventative counseling" I received was baseless, as I consistently found coverage for shifts I would not be able to attend and gave 24-72 hours' notice (see Attachment H). Additionally, the report was the result of an "unplanned absence" in the form of a car accident; a situation I had no control of. On December 6, 2014, prior to the encounter with Ms. Sansing, I was involved in a car accident. On the same day, despite the fact that the accident occurred, I still arrived for my shift and worked to the best of my ability. The following day, after my shift, I saw a physician to check for any injuries that I obtained from the accident. My physician, Dr. Neal Sikka, an emergency physician at GWUH, provided me with a work release stating I may not return to work till December 10, 2014. I provided this work release form to Ms. Jill Sansing (see Attachment G).

Ultimately, she called me into her office and persisted in filing an *Employee Corrective Action Report* form, on the basis of "unplanned absences" against me. The actions of Ms. Jill Sansing were both unethical and unfair, as I had an accident and even provided a work release form from my physician.

## Attachment C *on going discrimination/Harassment/*
### GWUH Hospital Employee Corrective Action Report (#2)

The *Employee Corrective Action Report* form labeled "C" is dated the same (December 14, 2014) as the *Employee Corrective Action Report* form labeled "B". This information is *not accurate* and should be noted. The significant difference between the two forms (B & C) lies in the box labeled "incident" on the form in two ways. Firstly, the form was revised, "after discussion", and now indicated that I had *4 unplanned absences* rather than the *6 unplanned absences* Ms. Jill Sansing initially described. The number of "unplanned absences" decreased due to the fact that I had provided evidence that: 1) I consistently found coverage (Attachment H: *Scheduled/Unscheduled Change Requests)*; 2) My car accident report/paperwork (Attachment G); and 3) That there were other employees, who had more "unplanned absences" than me, who did not receive any form of discipline (Attachment D: *An Email Between Ms. Makita Miller, Asst. Director of GWUH HR, with Blood Bank Records)*. Secondly, Ms. Sansing added (to the revised report), "regardless of finding her own coverage it is Grace's responsibility to cover her shift and failure to do so compromises Blood Bank operations. Failure to comply will result in further disciplinary action". Ms. Sansing remained persistent in her efforts to file an *Employee Corrective Action Report* form against me, harassing me to sign the form. At the time (and still, to this day) I refuse to believe the notion that I had a negative impact on the Blood Bank's work environment. As a result, I did not refuse; but felt uncomfortable to sign the form without the presence and consultation from my attorney to make sure Ms. Jill Sansing was taking correct action procedures.

In truth, I do not know the exact date in which Ms. Sansing served the revised *Employee Corrective Action Report* form (labeled C) to me.  However, I am positive that it was *not* presented to me on the same day (December 14, 2014) as the first *Employee Corrective Action Report* form, labeled "B". To further support my claim that the date on form "C" is inaccurate, it is important to note the date of the email I sent to Ms. Makita Miller: January 5, 2015 (see Attachment D). Instead, the revised form was presented *after* I had argued my case against the first form (B).  More specifically, in an attempt to clear my name and argue against the claim that I "had a negative impact on the ability of the Blood Bank team to provide quality care to our patients" (since obtaining a full time position with the FDA on August 25th, 2014), I confronted both Ms. Miller and Ms. Sansing via email with the Blood Bank's employee attendance records (see Attachment D). **The sole purpose of providing management with the Blood Bank's records was to bring to attention my claim, that the punishment I received (Attachment B) was unjustified and harsh**. Ultimately, my efforts to argue against Ms. Sansing's allegations

(Attachment B) failed. As I previously stated, the significant changes, that should be noted, was the number of "unplanned absences" on my record; from "6 unplanned absences" (Attachment B) to "4 unplanned absences (Attachment C) and more importantly, the additional remarks added. Compared to her first report (Attachment B), it is clear that the language and tone of Ms. Sansing's remarks were increasingly harsh and demanding. The added remarks only go on to support my claim that the wrongful and unwarranted discipline I was subject to, was a result of retaliation.

Having not signed both the initial and revised forms, I was subject to unfair treatment and harassment by Ms. Sansing. On January 18, 2015, Ms. Sansing continued to harass me into signing the forms (Attachment B & C), even after I was issued the "written warning" by Ms. Olga Kochar, Blood Bank Lab Director, for violating PHI codes (Attachment E: January 13, 2015). Ms. Sansing's repeated attempts to get me to sign the forms created an unpleasant work environment for me. After having met and discussed the events with both her and Ms. Olga Kochar, which resulted in a "written warning" against me, I did not understand why I needed to sign the forms. Ms. Sansing's behavior was unjustified and promoted an uncomfortable workplace.

**Attachment D** Discrimination Based in National orga /As7en

***Email between Grace Kaiyuan and Ms. Makita Miller, Asst. Director of GWUH HR***
***(Detailing Blood Bank Employee "Unplanned Absences" in 2014)***

Dated January 5, 2015, this email details an exchange with Ms. Makita Miller regarding employee "umplanned absences" in the Blood Bank. In response to the allegation made by Ms. Jill Sansing, "*Grace has had 6 unplanned absences since she started her full time job with the FDA. This has had a negative impact on the ability of the Blood Bank team to provide quality care to our patients*", I had collected all of the employees *Unscheduled Leave of Absences* at the Blood Bank. It was found that ***10 out of 17*** Blood Bank employees had more than 4 unplanned absences throughout the year.

Again, it was only *after* I had confronted Ms. Miller and Ms. Sansing that I received the *revised Employee Corrective Action Report* form (Attachment C). Ms. Sansing's repeated attempts (multiple occasions) to issue and file a report against me were unlawful and are acts of retaliation in the form of harassment. In addition, to support my allegations that I was regularly harassed, Ms. Sansing called me into her office on January 18, 2015, still persistent in her efforts to have me sign the *Employee Corrective Action Report.*

As I previously stated, I was wrongfully subject to discrimination, specifically, in both the forms of unjustified discipline and negative evaluation. **The email I sent to Ms. Miller, marks the first time I brought to attention my concerns of the unfair treatment I was subject to.** As the email reads, I stated to Ms. Miller, "What Jill did to me is unfair and in retaliation of my second job, she continually harasses me and gives me wrong information". **In the same email, I indicated that Ms. Sansing never before mentioned (to me) that I had a**

**negative impact in regards to schedule coverage.** If this was truly an issue, or becoming one, rather than immediately issuing an *Employee Corrective Action Report*, Ms. Sansing could've simply let me know without taking the "corrective action" measurements.

Included in this email is the Blood Bank's attendance records, detailing the number of "unplanned absences" the other employees maintained.  The attendance records prove that I was treated differently, and unfairly, compared to other GWUH employees. Looking closely, at this time not only did I have only 3 unplanned absences, including one for my car accident (FMLA), but I also had not yet been notified for being late. This should raise questions when comparing my attendance records to other employees. Notably, the records indicate that there were other employees with 5 or more unplanned absences in addition to not having been "notified for being late".

This email also details an *Internal Leave Policy* that Ms. Jill Sansing implemented. The policy is in place so that employees cannot request PTO or time off during certain days (work schedule is presented two months ahead of time). The policy also requires that employees use the *Scheduled/Unscheduled Change Request Form*, promoting the idea that employees find their own coverage. Lastly, the *Internal Leave Policy* requires a 72-hour notice to Ms. Sansing. This is important to note. Ms. Sansing is aware that I only work weekends and that at times, it is difficult to meet this requirement. Ms. Sansing, along with GWUH HR, is aware of my work schedule (weekends) because of an agreement to continue my employment "in a fulltime capacity based on a schedule agreed upon" (Attachment F: *HR Letter*).

On December 14, 2014, the day that Ms. Sansing first presented me with the *Employee Corrective Action Form* (Attachment B), one of my fellow co-workers went to GWUH HR and inquired if there were any particular rules stating how many unplanned absences an employee is allowed to have before disciplinary action was taken. It was learned at this time, from GWUH HR, there were *no specific number* of unplanned absences an employee maintains before receiving a verbal or written warning. To have learned this was concerning, especially since the Blood Bank records indicate that there were employees that did not receive and were subject to the severe discipline that I was, with 10+ unplanned absences.  After speaking with fellow co-workers (on the same night, December 14, 2014), hoping to find others who were subject to the same type of discipline, I found there were none. Interestingly enough, that following month, January 2015, my fellow co-workers started to complain to me that they were receiving warnings of unplanned absences after not ever receiving any before; which should also be noted.

An argument can be made that Ms. Sansing began to treat other employees similarly. Even if the argument was in favor of Ms. Sansing, questions remain. For example, "Why was I used as an example?"; "Why did Ms. Sansing only begin to start "warning" other employees after I was punished?" These questions support my allegations that Ms. Sansing's "corrective actions" (towards me) were an act of discrimination in the form of unjustified discipline and negative evaluation as she wrongfully targeted me and retaliated against me by using me as an example.  An additional argument can also be made when looking at the redacted copies of the Blood Bank's attendance records, you would not think to carry out discipline on me, strictly based on my records.

*Need to come up Languages*

**Attachment E**
*GWUH Employee Corrective Action Report (#3)*

Dated January 13, 2015. Completed and issued by, Ms. Olga Kochar, Blood Bank Lab Director, the *Employee Corrective Action Report* indicates that I received a *written warning* for violating PHI codes after using the Blood Bank employee attendance records to clear my name in a previous incident (see Attachments B & C). Before December 14, 2015, employees have never taken part in corrective action from either the Blood Bank lab director or manager. However, following the next month after my confrontation to Ms. Jill Sansing, Blood Bank Lab Manager, employees started receiving corrective action.

The information I presented to Ms. Miller via email (Attachment D) from the Blood Bank's records consisted *only* of "employees at the Blood Bank who had unplanned absences", as stated in my email. I cannot emphasize enough that the sole purpose of the Blood Bank's attendance records was to defend myself against the unwarranted allegations made by Ms. Jill Sansing.

The importance of including this document as evidence lies in GWUH's "corrective action" and termination policies. Again, I believe that my termination was unwarranted. To my knowledge, and even according to the *Employee Corrective Action Report* form, termination of an employee occurs after preventative counseling, a written warning, and a final written warning occur. My termination, on July 16, 2015, was uncalled for and severe, as the "corrective action" protocol was not properly followed. I had received an *Employee Corrective Action Report* form for "preventative counseling" and "written warning"—but never a "final written warning" and was immediately terminated.

On January 21, 2015, I took the findings of a "pre-assessment test for discrimination" (the test indicated that I was a victim of discrimination) to Ms. Makita Miller. As a result Ms. Makita Miller requested that another meeting take place to discuss the EEOC findings, which was held on February 12, 2015. At this meeting, it was established that Ms. Olga Kochar, Ms. Makita Miller, and I would "push a reset button" and that the warnings (Attachment B & C) administered by Ms. Jill Sansing would be removed; in which I would start with a clean slate. However, this meeting should not be overlooked. Although I maintained a "written warning" (Attachment E: January 13, 2015), I would no longer have to sign it and be kept accountable for the warnings issued by Ms. Sansing, stating that my *4 unplanned absences* had a negative impact in the Blood Bank.

### Attachment F
*Letter from GWUH HR*

Dated February 12, 2105, the letter from Ms. Makita Miller, Asst. Director of GWUH HR, was in response to a complaint I communicated with her on December 31, 2014. The return letter I received from Ms. Makita Miller of GWUH HR indicated that no further action would be taken in regards to my claims and that "inconsistency was not found". In conclusion, Ms. Miller broke my concerns down into three separate groups: "…having to resign before applying for a job"; "time and attendance"; and "communication concerns with your manager".

Under the section labeled "time and attendance", Ms. Miller informed me that I had "unscheduled call outs" and that my "infractions met the threshold for a documented 'preventive counseling' action. To my knowledge, at the time that I had received Ms. Sansing's first *Employee Corrective Action Report* form (Attachment B), I maintained only *one* "unscheduled call out" (November 21-23, 2014). Yet again, in comparison to other the number of "unscheduled call outs" the other employees maintained, the "preventative counseling" I received was unwarranted. Other employees were not subject to the same disciplinary actions I was.

Also included under the section of "time and attendance", Ms. Miller commented on the Blood Bank records I provided (in order to support my claim of inconsistent practice). Ms. Miller stated, "You also provided unapproved confidential documentation to support your claim of inconsistent practice, which was reviewed to ensure consistent practice. Based on our investigation, inconsistency was not found. The department will, however, facilitate leave policy sessions with the staff to educate and answer any questions". It is astonishing to me that "inconsistency was not found". Any organization, especially a respected one like GWUH, would be shocked and concerned at what the Blood Bank attendance records revealed. For an employee to remain employed, even with up to 13 or 15 "unscheduled absences" (Attachment D), should be a cause for concern. Even without having the Blood Bank records readily available to observe, the idea that one employee (in this case myself) required that the department, as a whole, "will facilitate leave policy sessions with the staff to educate and answer any questions", suggests that my findings were in fact, *significant* and eye opening.

**If my allegations were in fact "inconsistent", would the department go out of its way to start facilitating leave policy sessions for the staff?  Would the department have implemented the ASLLA policy shortly *after* this incident if my allegations were simply "inconsistent" and insignificant?** For the department to have to re-educate its *entire* staff on attendance policies suggests that the information I presented (Attachment D: *Blood Bank Records) was enough* to support my claims that I was retaliated against, harassed, and in receipt of unjust, negative evaluations from my manager. Unfortunately, this was not the case and GWUH HR decided against taking further action in my case, although they claim that they, "take

these concerns very seriously" and that they "foster an environment free from retaliation". It is also unfortunate that the claims I made to GWUH HR were merely "perceptions".

## Attachment G
### *GUWH Accident Report*

*Asian / N O*

The form indicates that after suffering injuries from a car accident that had occurred on December 6, 2014 in the late evening, I still arrived in an attempt to work. I did the best I could to provide the support and fulfill my responsibilities within the Blood Bank even after sustaining injuries.

This document is significant as the first *Employee Corrective Action Report* form (Attachment B) which was a result of obtaining an "unplanned absence" for a car accident that occurred on December 6, 2014, on my way to work. However, the day following my car accident, December 7, 2014, after my shift I saw a physician to check any injuries that I obtained from the accident. My physician, Dr. Neal Sikka, an emergency physician at GWUH provided me with a work release stating I may not return to work till December 10, 2014. I provided this work release form to Ms. Jill Sansing, yet she called me into her office and gave me a written warning of an unplanned absence. I view this unethical and unfair, as I had an accident and had provided a work release form at the time.

## Attachment H
### *GWUH Schedule Change Request(s)*

*Asian (Race)*
*N. O*

Multiple schedule change requests were obtained to suggest that I always found and filled the "schedule change request" upon agreement of a coverage tech. Time after time, I always found someone to cover my shift in an event that I was unable to make it to my scheduled shift. The documents included (related to schedule change requests) prove that the *Employee Corrective Action Report* forms (Attachment B & Attachment C) served by Ms. Sansing, on December 14, 2014, were unwarranted.

   1a. **Schedule Change Request:** Date of Request: *September 6, 2014*, Person Working the Change: *Lynn Posey*, the following person that has agreed to work for me on *September 7, 2014.*

   1b. **Scheduled/Unscheduled Time Off Request:** Name: *Grace Kaiyuan,* Request Date: *September 6,2014*, Type of Leave: *PTO*, **Time Off Requested- Full Day Increments: *September 7, 2014-September 12, 2014.***

   2. **Schedule Change Request:** Date of Request: *September 14, 2014*, Person Working the Change: *Lynn Posey*, the following person has agreed to work for me on *September 19, 2014*

3a. **Schedule Change Request:** Date of Request: *October 11, 2014*, Person Working the Change: *Lynn Posey*, the following person has agreed to work for me on *October 19, 2014*

3b. **Scheduled/Unscheduled Time Off Request:** Name: *Grace Kaiyuan,* Request Date: *October 10 ,2014*, Type of Leave: *PTO,* **Time Off Requested- Full Day Increments: *October 19, 2014-October 24, 2014.***

4. **Scheduled/Unscheduled Time Off Request:** Name: *Grace Kaiyuan,* Request Date: *November 8 ,2014*, Type of Leave: *PTO & ELB* **Time Off Requested- Full Day Increments: *November 21, 2014-November 22, 2014. (Return date: November 23, 2014)***

## Attachments in Relationship to My *Initial* EEOC Claim

**A. July 16, 2015 – Terminated from George Washington University Hospital - by Ms. Olga Kochar, *Lab Director*, Ms. Jill Sansing, *Lab Manager*, and Ms. Makita Miller, *HR Representative***

At approximately 3:45 PM, on July 16, 2015, a meeting was held at the HR office of George Washington University Hospital. The meeting was called to discuss my termination as an employee from GWUH. My termination as an employee of George Washington University Hospital was unwarranted, as I was subject to discrimination during my time as an employee. All three persons: Ms. Olga Kochar, Ms. Jill Sansing, and Ms. Makita Miller during the meeting did not allow me to defend myself and did not allow me to talk about other employees who have slept during work hours. Ultimately, my termination was the result of unlawful retaliation.

 a. **Attachment A:** *Online Job Posting*
 b. **Voice Recording B:** *Meeting (July 16, 2015)*
 c. **Image of Mr. A. Taveres' Tech Who Had Fallen Asleep**

**B. December 14, 2014 – Verbal Warning & Written Warning Issued for *Unscheduled* Leave– by Ms. Jill Sansing, *Lab Manager***

On December 14, 2014, Ms. Jill Sansing approached me to discuss my attendance. As a result, I was issued both a verbal warning and written warning.

 a. **Attachment B:** *Employee Corrective Action Report #1*
 b. **Attachment C:** *Employee Corrective Action Report #2 (not the correct date)*
 c. **Attachment G:** *Car Accident Report*
 d. **Attachment H:** *Scheduled/Unscheduled Change Requests*

**C. January 13, 2015 – Issued a Written Warning for Violating PHI's Policy – by Ms. Olga Kochar, *Lab Director,* and Ms. Makita Miller, *HR* Representative**

On January 13, 2015, a meeting was held at the HR offices of GWUH. In attendance, excluding myself, were Ms. Olga Kochar and Ms. Miller. It was found that the evidence I provided to defend myself, records of the blood bank's communication book, was in violation of the hospital's PHI's policy. As a result, I was issued a second written warning.

 a. **Attachment D:** *Email between Grace Kaiyuan and Ms. Makita Miller*
 b. **Attachment E:** *Employee Corrective Action Report #1*

**D. February 19, 2015 – Informed that I Would Start with a "Clean Slate"- by Ms. Olga Kochar,** *Lab Director,* **& Ms. Makita Miller,** *HR Representative*

On February 19, 2015, another meeting took place within the HR offices at GWUH. Present were Ms. Kochar and Ms. Miller. The meeting took place to discuss my pre-assessment test for discrimination test with the EEOC, stating that I was victim to discrimination. As a result, Ms. Miller suggested we "push a reset button". On this day the warnings (verbal and written) on my record were removed and I would start with a clean slate. Additionally, a new internal policy at GWUH was put into place: ASLLA policy.

     **a. Attachment F:** *Letter from HR*

**E. July 10, 2015- Previous PTO Request denied – by Ms. Jill Sansing,** *Lab Manager*

On July 10, 2015, I emailed Ms. Sansing in regards to a PTO request I made earlier on May 2015. On May 17, 2015, I had been approved, by Ms. Sansing, for PTO through the second week of August. However, Ms. Sansing now indicated that I was responsible for finding coverage for August 14-16, 2015, stating that it is "Leave Without Pay" (LWOP).

**Witnesses You May Contact:**

| Name of Witnesses During My Incident | Contact Number |
|---|---|
| Antoine Tavares (Day Shift) | [C]: (404) 218-8051 |
| Cheryl Williams (Night Shift) | [C]: (240) 779-5367 |
| Emran Balaum (Day Shift) | [C]: (703) 835-0307 |
| *Eric Roberts (Afternoon Shift) | [C]: (202) 412-5095 |
| Renee Warren (Afternoon Shift) | [C]: (240) 838-4674 |
| *Gloria Reyes (Day Shift) | [H]: (703) 569-9451 |
| *Garey Morch (Day Shift) | [C]: (240) 427-8705 |

*-Shift Supervisor/Senior Lead Tech

**The George Washington University Blood Bank Lab Phone Number: <u>1-(202) 715-4398</u>**

